Slip Op. 12-27

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PAT HUVAL RESTAURANT & OYSTER BAR, INC., *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES INTERNATIONAL TRADE COMMISSION, *et al.,*<br><br>Defendants,<br><br>and<br><br>THE TIMKEN COMPANY and MPB CORPORATION,<br><br>Defendant Intervenors. | Before:    Gregory W. Carman, Judge<br>            Timothy C. Stanceu, Judge<br>            Leo M. Gordon, Judge<br><br>Consol. Court No. 06-00290 |

### OPINION

[Dismissing the consolidated action for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction]

Dated: March 1, 2012

*Jacques Pierre Soileau*, Soileau & Soileau of Breaux Bridge, LA, for Plaintiffs Pat Huval Restaurant & Oyster Bar, Inc., Aqua Farms Crawfish, Inc., Catfish Wholesale, Inc., Charles Bernard (d/b/a/ Charles' Crawfish Pad), Andre Leger (d/b/a/ Chez Francois), Jim Fruge (d/b/a/ Acadiana Fisherman's Co op), J. Bernard Seafood Processing, Inc., and Frank Melancon (d/b/a French's Enterprises Seafood Peeling Plant).

*Herbert Carl Shelley, Alice Alexandra Kipel, Laura Rose Ardito,* and *Michael Thomas Gershberg,* Steptoe & Johnson, LLP of Washington, DC, for Plaintiff SKF USA, Inc.

*John Marshall Gurley*, and *Nancy Aileen Noonan,* Arent Fox, LLP, of Washington, DC, for Plaintiff Koyo Corporation of U.S.A.

*David S. Silverbrand, Courtney S. McNamara, Michael J. Dierberg,* and *Todd M. Hughes,* Trial Attorneys, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for Defendant United States Customs and Border Protection.  With them on the briefs were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Franklin E. White, Jr.*, Assistant Director, and *Andrew G. Jones*, Office of Assistant Chief Counsel, United States Customs and Border Protection, of counsel.

*Patrick V. Gallagher, Jr.*, Attorney Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for Defendant, U.S. International Trade Commission.  With him on the briefs were *James M. Lyons*, General Counsel, and *Neal J. Reynolds*, Assistant General Counsel for Litigation.

*Geert De Prest, Terence P. Stewart, Amy S. Dwyer*, and *Patrick J. McDonough,* Stewart and Stewart, of Washington, DC, for Defendant Intervenors.

CARMAN, JUDGE: This action has been consolidated from six cases brought by a group of

eight domestic producers of processed crawfish tail meat (collectively, the "Pat Huval

Plaintiffs"),[1] Koyo Corporation of U.S.A. ("Koyo"),[2] and SKF USA, Inc. ("SKF"),[3]

challenging the constitutionality of the Continued Dumping and Subsidy Offset Act of

2000 ("CDSOA" or "Byrd Amendment"), and the administration of the statute by

---

[1] Second Supp. and Am. Compl., Ct. No. 06 00290, Nov. 8, 2006, ECF No. 72 ("Compl. 1").

[2] Compl., Ct. No. 06 00324, Sept. 25, 2006, ECF No. 4 ("Compl. 2"); Compl., Ct. No. 08 00340, Sept. 30, 2008, ECF No. 2 ("Compl. 5"); Compl., Ct. No. 10 00001, Jan. 7, 2010, ECF No. 2 ("Compl. 6").

[3] Compl., Ct. No. 06 00328, Sept. 29, 2006, ECF No. 4 ("Compl. 3"); Compl., Ct. No. 07 00035, Feb. 5, 2007, ECF No. 4 ("Compl. 4")

Defendants.[4]  These cases were consolidated by order of the Court under Consol. Ct.

No. 06 00290.  (Order (Feb. 23, 2007), ECF No. 91; Order (Mar. 16, 2011), ECF No. 207.)

Plaintiffs claim that they unlawfully were denied affected domestic producer ("ADP")

status, which would have qualified them to receive distributions under the CDSOA.

The case is now before the Court on dispositive motions.  Defendants United

States Customs and Border Protection ("CBP") and the United States International

Trade Commission ("ITC") each move to dismiss Plaintiff's complaint for failure to state

a claim upon which relief can be granted pursuant to USCIT Rule 12(b)(5), and for

judgment on the pleadings under USCIT Rule 12(c).  (Def. U.S. Customs and Border

Prot.'s Mot. to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted

and for J. on the Pleadings ("CBP Mot."), May 6, 2011, ECF No. 219); (Def. U.S. Int'l

Trade Comm'n's Mot. to Dismiss for Failure To State a Claim and For J. on the

Pleadings ("ITC Mot."), May 2, 2011, ECF No. 215).  Defendant Intervenors Timken US

Corp. and MPB Corp. (collectively, "Timken") move for judgment on the pleadings

pursuant to USCIT Rule 12(c) with respect to the complaints filed by SKF and Koyo.

(Timken's Mot. for J. on the Pleadings with Respect to SKF's and Koyo's Compl.'s

("Timken Mot."), May 2, 2011, ECF No. 217.)  For the reasons set forth below, Plaintiffs'

---

[4] Pub. L. No. 106 387, §§ 1001 1003, 114 Stat. 1549, 1549A 72 75 (codified at
19 U.S.C. § 1675c (2000)), repealed by Deficit Reduction Act of 2005, Pub. L. 109 171,
§ 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007).

consolidated action will be dismissed under USCIT Rule 12(b)(5) for failure to state a

claim upon which relief can be granted, and under USCIT Rule 12(b)(1) on timeliness

and mootness grounds.

### BACKGROUND

Certain background information is provided in our earlier opinion in this case,

Pat Huval Restaurant & Oyster Bar, Inc. v. United States, 32 CIT ___, 547 F. Supp. 2d

1352 (2008), and is supplemented herein.

The Pat Huval Plaintiffs[5] are domestic producers of crawfish tail meat who

seek to obtain status as affected domestic producers and receive CDSOA disbursements

from duties collected on an antidumping duty order on crawfish from China.  (Compl. 1

at 10.)  The Pat Huval Plaintiffs have not received CDSOA distributions because "they

did not indicate 'support' of the original 1996 crawfish antidumping petition."

(Compl. 1 ¶ 22.)

Plaintiff Koyo is a U.S. producer of tapered roller bearings and ball bearings.

(See, e.g., Compl. 2 ¶ 1.)  Koyo seeks through this litigation to obtain status as an

affected domestic producer and receive CDSOA disbursements for Fiscal Years

---

[5] The "Pat Huval Plaintiffs" are Pat Huval Restaurant & Oyster Bar, Inc., Aqua Farms Crawfish, Inc., Catfish Wholesale, Inc., Charles Bernard (d/b/a/ Charles' Crawfish Pad), Andre Leger (d/b/a Chez Francois), Jim Fruge (d/b/a Acadiana Fisherman's Co op), J. Bernard Seafood Processing, Inc., and Frank Melancon (d/b/a French's Enterprises Seafood Peeling Plant). (Compl. 1 ¶¶ 3 10.)

2006 2009 from duties collected on 13 antidumping duty orders on tapered roller and

ball bearings.  (Compl. 2 ¶ 20; Compl. 5 ¶ 19; Compl. 6 ¶¶ 19 21.)  Koyo states that it

did not support any of the petitions that culminated in the issuance of those 13 orders.

(See, e.g., Compl. 2 ¶¶ 16, 28 ("Koyo USA did not support the underlying antidumping

duty investigations for the subject bearings orders"; see also Compl. 5 ¶¶ 15, 29;

Compl. 6 ¶¶ 15, 30.)  The ITC did not include Koyo on a list that it sent to Customs of

producers potentially eligible for ADP status "for any of the fiscal years . . . since the

promulgation of the CDSOA."  (Compl. 2 ¶ 17; see also Compl. 5 ¶ 16; Compl. 6 ¶ 16.)

   Plaintiff SKF is a U.S. manufacturer of antifriction bearings, including ball

bearings.  (See, e.g., Compl. 3 ¶ 1.)  SKF also seeks to obtain status as an ADP and

receive CDSOA disbursements for Fiscal Years 2004 and 2006 from duties collected on

various antidumping duty orders on antifriction bearings.  (Compl. 3 Prayer for Relief;

Compl. 4 Prayer for Relief.)  SKF alleges that it was considered "part of the domestic

industry for [antifriction bearings]" but does not allege that it supported the petitions

that culminated in the issuance of the relevant antidumping duty orders.  (See Compl. 3

¶ 26; Compl. 4 ¶ 37.)  Because of its failure to support the petitions, SKF "has been

denied status as an 'affected domestic producer' and, consequently, has been deemed

ineligible to receive disbursements under the CDSOA."  (Compl. 3 ¶ 38; Compl. 4 ¶ 52.)

In 2008, acting on motions to dismiss pursuant to USCIT Rules 12(b)(1) and

12(b)(5), we limited the relief Plaintiffs could obtain for their facial constitutional

challenges, and limited which agency actions the Pat Huval Plaintiffs would be

permitted to challenge in their Administrative Procedure Act (APA) claim.[6] Pat Huval,

547 F. Supp. 2d at 1365.

## JURISDICTION

The Court exercises subject matter jurisdiction over this action pursuant to

section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(i)(4), which grants the

Court of International Trade exclusive jurisdiction of any civil action commenced

against the United States that arises out of any law providing for administration and

enforcement with respect to, inter alia, the matters referred to in § 1581(i)(2), which are

"tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other

than the raising of revenue."  The CDSOA, under which this action arises, is such a law.

See Furniture Brands Int'l, Inc. v. United States, 35 CIT __, __ __, 807 F. Supp. 2d 1301,

1307 10 (2011).

---

[6] Specifically, we held that "Plaintiffs' claims bringing facial constitutional
challenges to the Byrd Amendment are dismissed to the extent that they seek relief for
Byrd distributions that occurred prior to the two year periods ending with
commencement of their respective suits," and that "Count Two of the Crawfish
Producers' complaint is dismissed insofar as the Crawfish Producers challenge agency
actions that occurred prior to February 27, 2004."  Pat Huval, 547 F. Supp. 2d at 1365.

Consol. Court No. 06-00290                                                    Page 7

### DISCUSSION

The CDSOA amended the Tariff Act of 1930 to provide for an annual

distribution (a "continuing dumping and subsidy offset") of duties assessed pursuant to

an antidumping duty or countervailing duty order to affected domestic producers as

reimbursements for qualifying expenditures.[7]  19 U.S.C. § 1675c(a) (d).  ADP status is

limited to petitioners, and interested parties in support of petitions, with respect to

which antidumping duty and countervailing duty orders are entered, and who remain

in operation.  Id. § 1675c(b)(1).  The CDSOA directed the ITC to forward to Customs,

within sixty days after an antidumping or countervailing duty order is issued, lists of

persons with potential ADP status, i.e., "petitioners and persons with respect to each

order and finding and a list of persons that indicate support of the petition by letter or

through questionnaire response."  Id. § 1675c(d)(1).  The CDSOA also provided for

distributions of antidumping and countervailing duties assessed pursuant to existing

antidumping duty and countervailing duty orders and for this purpose directed the ITC

---

[7] Congress repealed the CDSOA in 2006, but the repealing legislation provided that "[a]ll duties on entries of goods made and filed before October 1, 2007, that would [but for the legislation repealing the CDSOA], be distributed under [the CDSOA] shall be distributed as if [the CDSOA] had not been repealed." Deficit Reduction Act of 2005, Pub. L. No. 109 171, § 7601(b), 120 Stat. 4, 154 (2006).  In 2010, Congress further limited CDSOA distributions by prohibiting payments with respect to entries of goods that as of December 8, 2010 were "(1) unliquidated; and (2)(A) not in litigation; and (B) not under an order of liquidation from the Department of Commerce." Claims Resolution Act of 2010, Pub. L. No. 111 291, § 822, 124 Stat. 3064, 3163 (2010).

to forward to CBP a list identifying potential ADPs "within 60 days after the effective

date of this section in the case of orders or findings in effect on January 1, 1999 or

thereafter . . . ." <u>Id.</u> The CDSOA directed CBP to publish in the Federal Register, prior

to each distribution, lists of ADPs potentially eligible for distributions based on the lists

obtained from the ITC, <u>id.</u> § 1675c(d)(2), and to distribute annually all funds, including

accrued interest, from antidumping and countervailing duties received in the preceding

fiscal year, <u>id.</u> § 1675c(d)(3), (e).

      The Court of Appeals, in <u>SKF USA, Inc. v. U.S. Customs and Border Protection</u>

("<u>SKF USA II</u>"), upheld the CDSOA against constitutional challenges brought on First

Amendment and equal protection grounds. <u>SKF USA, Inc. v. U.S. Customs and Border</u>

<u>Protection</u>, 556 F.3d 1337, 1360 ("[T]he Byrd Amendment is within the constitutional

power of Congress to enact, furthers the government's substantial interest in enforcing

the trade laws, and is not overly broad. We hold that the Byrd Amendment is valid

under the First Amendment."); <u>id.</u> ("Because it serves a substantial government interest,

the Byrd Amendment is also clearly not violative of equal protection under the rational

basis standard.").[8]

---

    [8] <u>SKF USA II</u> reversed the decision of the Court of International Trade in <u>SKF</u>
<u>USA Inc. v. United States</u>, 30 CIT 1433, 451 F. Supp. 2d 1355 (2006) ("<u>SKF USA I</u>"),
which held the petition support requirement of the CDSOA unconstitutional on Fifth
Amendment equal protection grounds.

I.      Claims Asserted in This Consolidated Action

A.   Claims Common To All Plaintiffs

All Plaintiffs   Koyo, SKF, and the Pat Huval Plaintiffs   challenge the

constitutionality of Defendants' application of the CDSOA on three grounds.  First, they

challenge the "in support of the petition" requirement of the CDSOA ("petition support

requirement"), as it was applied to each of them, on First Amendment grounds.[9]

(Compl. 1 ¶¶ 38 39, Compl. 2 ¶¶ 53 56, Compl. 3 ¶¶ 44 46, Compl. 4 ¶¶ 58 60,

Compl. 5 ¶¶ 59 62, Compl. 6 ¶¶ 58 61.)  Second, all Plaintiffs challenge the petition

support requirement, as applied, on Fifth Amendment equal protection grounds.

(Compl 1 ¶¶ 35 37, Compl. 2 ¶¶ 61 64, Compl. 3 ¶¶ 47 50, Compl. 4 ¶¶ 61 64,

Compl. 5 ¶¶ 67 70, Compl. 6 ¶¶ 66 69.)  Third, all Plaintiffs claim that the petition

support requirement violates the Fifth Amendment due process guarantee in basing

their eligibility for disbursements on past conduct, i.e., support for a petition.  (Compl. 1

¶¶ 29 30, Compl. 2 ¶¶ 69 71, Compl. 3 ¶¶ 51 53, Compl. 4 ¶¶ 65 67, Compl. 5

¶¶ 75 77, Compl. 6 ¶¶ 74 76.)

_____

[9] Plaintiffs SKF and Koyo both claim that the CDSOA violated not only their First Amendment right to free speech, but also their right to petition the government for redress of grievances.  "Although the right to petition and the right to free speech are separate guarantees, they are related and generally subject to the same constitutional analysis." Wayte v. United States, 470 U.S. 598, 611 n.11 (1985) (citing NAACP v. Claiborne Hardware Co., 458 U.S. 886, 911 915 (1982)).  Because SKF and Koyo do not allege that the CDSOA burdened the right to free speech in a different manner than the right to petition, the Court will view these claims as essentially the same. See id.

### B.   Claims Exclusive to the Pat Huval Plaintiffs

The Pat Huval Plaintiffs bring three claims distinguishable from those brought

by SKF or Koyo.  First, the Pat Huval Plaintiffs claim that the CDSOA conferred upon

them a vested property interest, of which they have been unreasonably deprived

without notice or hearing, in violation of the due process clause of the Fifth

Amendment.  (Compl. 1 ¶¶ 27 28.)  Second, the Pat Huval Plaintiffs claim that the

actions of the ITC and CBP to adjudicate a right bestowed in 2000 based on a

proceeding that took place in 1996 were arbitrary, capricious and an abuse of discretion

in violation of the APA.  (Id. ¶¶ 31 34.)  Last, the Pat Huval Plaintiffs claim that the

CDSOA is an unconstitutional Bill of Attainder in violation of the Fifth Amendment

because it retroactively penalized certain domestic producers for free speech actions

taken prior to enactment.  (Id. ¶¶ 40 42.)

### C.   Claims Exclusive to Koyo

Koyo brings claims distinguishable from those brought by the other Plaintiffs

in this consolidated action.  First, Koyo claims that the CDSOA is facially violative of the

First Amendment guarantees of freedom of speech and belief and the ability of the

citizenry to petition the government for a redress of grievances, and also is facially

overbroad because it compels speech.[10]  (Compl. 2 ¶¶ 57 60, Compl. 5 ¶¶ 63 66,

---

[10] Although SKF USA II did not precisely consider whether the CDSOA was
facially overbroad because it compels speech, the reasoning by which the Court of

Compl. 6 ¶¶ 62  65.)  Second, Koyo claims that the CDSOA is facially violative of the

equal protection guarantees of the Constitution because it creates a classification

implicating Koyo's fundamental speech rights, and because it impermissibly

discriminates between similarly situated domestic producers.  (Compl. 2 ¶¶ 65  68,

Compl. 5 ¶¶ 71  74, Compl. 6 ¶¶ 70  73.)[11]

Koyo has also filed a motion for leave to amend its complaint to assert a claim

that Defendant Intervenors have been unjustly enriched by virtue of receiving CDSOA

distributions belonging, in part, to Koyo.  (Mot. for Leave to Amend Compl. and Mem.

in Support, April 11, 2008, ECF No. 146.)

### D.  Claims Exclusive to SKF

SKF brings one unique claim in this consolidated action.  In the wake of <u>SKF</u>

<u>USA Inc. v. United States</u>, 31 CIT 1163, 502 F. Supp. 2d 1325 (2007), the ITC informed

SKF that "a decision by this Court as to SKF USA's status as an 'affected domestic

producer' for one fiscal year's disbursements will not be applied to any year but that

one fiscal year."  (Compl. 4 ¶¶ 69  70.)  SKF challenges this agency determination,

---

Appeals rejected SKF's First Amendment claim applies with equal force to dispose of
this claim.

[11] In its Complaints, Koyo also asserts that because the CDSOA is
unconstitutional, it is void *ab initio*, and that the violating provisions are severable from
the CDSOA as a whole.  Although it styles these assertions as "Count 6" and "Count 7",
they are rather relief sought and the Court so construes them.

ostensibly, though not explicitly, via the Administrative Procedure Act. SKF claims that

in taking this position, the ITC has injured SKF by forcing it to "file an action each year

in order to obtain the relief granted by the Court resulting from the Court's decision

that the CDSOA, as applied to SKF[,] is unconstitutional." (Id. ¶ 71.) SKF claims that

"[o]nce determined to be unconstitutional[] as to SKF USA in one case, the CDSOA is

equally unconstitutional in all cases affecting SKF USA" and that the ITC's "refusal thus

violates the Constitutional rights granted to SKF USA through the First Amendment,

the equal protection guarantees of the U.S. Constitution and the due process guarantees

of the U.S. Constitution." (Id. ¶¶ 71 72.)

II.        **Statute of Limitations**

        Timken argues that three sets of claims in this consolidated action are barred

by the two year statute of limitations in 28 U.S.C. § 2636(i) and should be dismissed on

jurisdictional grounds. First, Timken argues that the action SKF commenced on

September 29, 2006 (Compl. 3; prior to consolidation, Court No. 06 00328) to obtain a

CDSOA distribution for Fiscal Year 2004 ("SKF's 2004 Challenge") is untimely. (Timken

Mot. 25 29.) Second, Timken argues that the action Koyo commenced on September 30,

2008 (Compl. 5; prior to consolidation, Court No. 08 00340), is untimely to the extent

Koyo seeks to obtain a CDSOA distribution for Fiscal Year 2006 ("Koyo's 2006

Challenge"). (Id. at 29 30.) Last, Timken argues that all of Koyo's claims asserting

facial challenges to the constitutionality of the CDSOA are barred by the two year

statute of limitations.  (Id. at 30.)  The Court determines that only two sets of

claims   SKF's 2004 Challenge and Koyo's 2006 Challenge   are barred by the two year

statute of limitations.

In SKF USA II, the Court of Appeals applied the principle that a cause of action

accrues when all events necessary to fix the alleged liability of the defendant have

occurred.  SKF USA II, 556 F.3d at 1348 49 &1348 n.15 (citations omitted).  The Court of

Appeals concluded in SKF USA II that "the earliest SKF's claim could have accrued was

when Customs published its notice of intent to distribute duties under the Byrd

Amendment for fiscal year 2005 and invited potentially eligible producers to file

certifications requesting a share of the distributions."  Id. at 1349.

In the present case, the claims challenging the constitutionality of the CDSOA

brought in SKF's 2004 Challenge and Koyo's 2006 Challenge are time barred because

they were not brought within two years of the dates on which those claims accrued.  See

28 U.S.C. § 2636(i).  The 2004 notice of intent to distribute was published on June 2, 2004.

Distribution of Continued Dumping and Subsidy Offsets to Affected Domestic

Producers, 69 Fed. Reg. 31,162 (June 2, 2004).  SKF did not file its lawsuit challenging

this distribution until more than two years later, on September 29, 2006.  (Compl. 3.)

The 2006 notice of intent to distribute was published on June 1, 2006.  Distribution of

Continued Dumping and Subsidy Offset to Affected Domestic Producers, 71 Fed. Reg.

31,336 (June 1, 2006).  Koyo did not file its lawsuit challenging this distribution until

more than two years later, on September 30, 2008.  (Compl. 5.)  The petition support

requirement was applied to each plaintiff by the respective ITC decision to exclude it

from the list of potential ADPs, not by any subsequent action by CBP, which does not

have discretion to add potential ADPs to the Commission's list based on CBP's own

determination of petition support.  See 19 U.S.C. § 1675c(d)(2) (providing that the notice

of intention to distribute is to include "the list of affected domestic producers

potentially eligible for the distribution based on the list obtained from the Commission .

. . .").  The publication of the notices of intent to distribute placed each plaintiff on notice

that Customs would make a distribution for the relevant fiscal year and that the plaintiff

would not be participating in that distribution.  Each plaintiff could have challenged the

ITC decision to exclude it from the list of potential ADPs for the relevant fiscal year as

soon as that list was made public in CBP's notice.  We conclude, therefore, that SKF's

2004 Challenge and Koyo's 2006 Challenge first accrued on the respective dates of

publication of the two notices.

Further, we conclude that the statute of limitations in 28 U.S.C. § 2636(i) is

jurisdictional.  See SKF USA II, 556 F. 3d at 1348 (assuming without deciding that the

statute is jurisdictional under the test set forth in John R. Sand & Gravel Co. v. United

States, 552 U.S. 130 (2008)).  Accordingly, the claims comprising SKF's 2004 Challenge

and Koyo's 2006 Challenge are not properly before us, and we dismiss these claims for

lack of jurisdiction according to USCIT Rule 12(b)(1).

Finally, we reject Defendant Intervenors' argument that Koyo's remaining

facial challenges are barred by the two year statute of limitations because these

challenges were not brought within two years of enactment.  In dicta in SKF USA II, the

Court of Appeals opined that "SKF could have filed a facial challenge to the Byrd

Amendment immediately after its enactment," 556 F.3d at 1348, but the Court of

Appeals did not state that causes of action challenging the Byrd Amendment could not

accrue after the date of enactment.  The Court of Appeals reached a holding as to the

earliest date on which a particular cause of action at issue in that case could have

accrued, i.e., the date of publication of the notice of intent to distribute.[12]  The date on

---

[12] Our earlier opinion in Pat Huval Restaurant & Oyster Bar, Inc. v. United States, 32 CIT __, 547 F. Supp. 2d 1352, 1360 (2008), reached a different conclusion than did the Court of Appeals in SKF USA II as to the earliest date on which a cause of action challenging the Byrd Amendment could accrue.  The Court of Appeals reasoned that a claim may accrue for a particular fiscal year once it is known that "Byrd Amendment distributions would be available" for that year, id. at 1348 49, rather than once a plaintiff suffered the annual "injury caused by the payments made to their direct domestic competitors," as we reasoned in Pat Huval, 32 CIT at __, 547 F. Supp. 2d at 1347. Having entered no judgment on the claims that we did not dismiss following our earlier opinion, we consider the statute of limitations questions anew based on the relevant guidance in SKF USA II.  We reject SKF's argument that our having previously decided that the claims remaining in this action were not time barred and Defendant Intervenors' failing to move for reconsideration of that decision within 30 days make it inappropriate for us to reconsider whether the claims pertaining to fiscal year 2004 were

which a cause of action of a domestic party bringing a constitutional challenge to the

Byrd Amendment accrues must be determined according to the specific facts giving rise

to that claim.  On the particular facts pertinent here, Koyo's facial claims accrued on the

date of public notice of a final ITC determination that Koyo had been determined to be

ineligible for a distribution related to the particular fiscal year in question.

III.      **Plaintiffs' Facial and As Applied Challenges Under the First Amendment
          and the Equal Protection Clause Are Foreclosed by Binding Precedent**

          **A.   Koyo's Facial Challenges**

          The survival of Koyo's facial claims, however, is short lived.  Koyo's claims

facially challenging the constitutionality of the CDSOA's petition support requirement

under the First Amendment (See, e.g., Compl. 2 ¶¶ 57 60) and the equal protection

doctrine of the Fifth Amendment (Id. ¶¶ 65 68) are precluded by the holding in SKF

USA II.  In SKF USA II, the Court of Appeals held that the CDSOA did not violate

constitutional First Amendment or equal protection principles as applied to SKF in that

case.  556 F.3d at 1360.  That ruling forecloses any possibility that the statute is facially

unconstitutional on the First Amendment and equal protection grounds asserted by

---

timely filed.  SKF's Resp. 28 29.  SKF is correct that reconsideration under Rule 59(a) is
not available in this case because motions pursuant to Rule 59(a) must be "filed not later
than 30 days after the entry of the judgment or order," USCIT Rule 59(b), which was not
the case here, SKF's Resp. 28 29.  But the inapplicability of Rule 59(a) does not exhaust
the court's power to reconsider its non final decisions.  Instead, the Court may
reconsider its prior decision pursuant to its general authority, which is recognized by
USCIT Rule 54, to reconsider a non final order prior to entering final judgment.

SKF in <u>SKF USA II</u>.  Koyo's claims to the same effect therefore must be dismissed

pursuant to USCIT Rule 12(b)(5) for failure to state a claim upon which relief can be

granted.

### B.   SKF's As-Applied Challenges

Timken argues that SKF's as applied First Amendment and equal protection

challenges to the CDSOA are barred either by res judicata (claim preclusion) or

collateral estoppel (issue preclusion).  (Timken Mot. 4 16.)  "Under res judicata, a final

judgment on the merits bars further claims by parties or their privies based on the same

cause of action."  <u>Brown v. Felsen</u>, 442 U.S. 127, 131 (1979) (internal quotation omitted).

"Under the doctrine of collateral estoppel, or issue preclusion, a litigant who has

litigated an issue in a full and fair proceeding is estopped from relitigating the same

issue in a subsequent proceeding."  <u>Sahaviriya Steel Indus. Pub. Co. v. United States</u>,

34 CIT __, __, 714 F. Supp. 2d 1263, 1273 (2010) (citing <u>Thomas v. Gen. Servs. Admin.</u>,

794 F.2d 661, 664 (Fed. Cir. 1986)).  The principle of issue preclusion is applicable here.

SKF litigated its First Amendment as applied and equal protection challenges

before the Court of Appeals in <u>SKF USA II</u> and received a final judgment on the merits

of those claims in that case.  (SKF did not litigate and receive a final judgment on the

merits of its due process retroactivity claim, which we address elsewhere in this

opinion.)  The Court holds that SKF is barred from relitigating the First Amendment as

applied and equal protection issues in the present case, notwithstanding that SKF is

pursuing a different cause of action in seeking CDSOA distributions for a different fiscal

year than that involved in SKF USA II.

　　　　SKF argues in response that its as applied First Amendment and equal

protection claims should not be barred by collateral estoppel.  (Pl. SKF USA Inc.'s Opp.

to Def.'s and Def. Ints.' Mots. To Dismiss and for J. on the Pleadings 20 21 ("SKF's

Opp."), June 24, 2011, ECF No. 223.)  SKF argues that collateral estoppel should not

apply in light of the Supreme Court's decision in Sorrell v. IMS Health Inc., 131 S. Ct.

2653 (2011), which it believes satisfies an "exception to the preclusion doctrines for new

claims brought after 'momentus changes in important, fundamental constitutional

rights.'" (SKF's Opp. 20 21) (quoting Roche Palo Alto v. Apotex, Inc., 531 F.3d 1372,

1380 81 (Fed. Cir. 2008) (internal quotation omitted)).  Sorrell is not an appropriate basis

for invoking the exception to issue preclusion, as the Supreme Court's holding in the

case does not undermine the validity of SKF USA II or the Central Hudson test on

which the Court of Appeals relied in analyzing the petition support requirement.  As

we determined recently in ruling on another as applied First Amendment challenge to

the CDSOA, Sorrell did not implicitly overturn SKF USA II or change the requisite level

of scrutiny appropriate for the CDSOA.  See Furniture Brands, 35 CIT at __, 807

F. Supp. 2d at 1313 15.  Sorrell and SKF analyze dissimilar statutes, which vary

considerably in how they affect expression as well as in purpose. Id. As the Court of

Appeals concluded in SKF USA II, the CDSOA does not have as a stated purpose, or

even an implied purpose, the intentional suppression of expression, SKF USA II, 556

F.3d at 1351 52, whereas the Vermont statute the Supreme Court struck down in Sorrell

was intended to suppress expression, specifically the use in marketing of identifying

information related to prescription drugs, see Sorrell, 131 S. Ct. at 2660. Because Sorrell

does not require us to review the CDSOA according to a First Amendment analysis

differing from that applied by the Court of Appeals in SKF USA II, it does not represent

a "momentus change[] in important, fundamental constitutional rights" warranting an

exception to the issue preclusion doctrine. See Roche Palo Alto, 531 F.3d at 1380 81.

### C.   Koyo's & the Pat Huval Plaintiffs' As-Applied Challenges

Koyo and the Pat Huval Plaintiffs fail to plead facts allowing the Court to

conclude that their as applied First Amendment and equal protection challenges to the

CDSOA are distinguishable from claims brought, and rejected, in SKF USA II. The

Complaints contain no assertions that the CDSOA was applied to the Pat Huval

Plaintiffs or Koyo in a different manner than the statute was applied to other parties

who did not support a petition. Neither Koyo nor the Pat Huval Plaintiffs have claimed

that they supported any of the antidumping duty petitions at issue in this consolidated

case. See generally, supra, at 4 5. The facts as pled place Koyo and the Pat Huval

Plaintiffs on the same footing as other potential claimants who did not support the

petition, such as SKF in <u>SKF USA II</u>. <u>See</u> 556 F.3d at 1343 ("Since it was a domestic

producer, SKF also responded to the ITC's questionnaire, but stated that it opposed the

antidumping petition.").

 Koyo unsuccessfully attempts to distinguish its as applied First Amendment

and equal protection claims from those resolved in <u>SKF USA II</u>.  (Pl. Koyo Corp. of

U.S.A.'s Opp. to Defs.' and Def. Intervenors' Mots. to Dismiss and for J. on the

Pleadings ("Koyo Opp.") 10  11, June 24, 2011, ECF No. 224.)  While Koyo seeks

distributions for different fiscal years and from different antidumping duty orders than

SKF sought in <u>SKF USA II</u>, these factual distinctions have no bearing on the

applicability of the holding of that case.  Neither SKF nor Koyo expressed support for a

petition, and thus neither qualified to become an ADP.  Consequently, Koyo's and the

Pat Huval Plaintiffs' as applied First Amendment and equal protection challenges are

also foreclosed by the holding in <u>SKF USA II</u> and must be dismissed pursuant to USCIT

Rule 12(b)(5) for failure to state a claim upon which relief can be granted.

## III. The Petition Support Requirement Does Not Violate Due Process

### A.  Retroactivity

 All Plaintiffs claim that the CDSOA is impermissibly retroactive, in violation of

the due process guarantee of the Fifth Amendment, because it bases their eligibility for

disbursements on past conduct, i.e., support for a petition.  In New Hampshire Ball

Bearing v. United States, 36 CIT __, __ __, Slip Op. 12 2, at 8 14 (Jan. 3, 2012), we

considered a claim essentially identical to Plaintiffs' retroactivity claims.  We

determined then that "the retroactive reach of the petition support requirement in the

CDSOA is justified by a rational legislative purpose and therefore is not vulnerable to

attack on constitutional due process grounds."  Id. at 14.  We reasoned that "[i]t was not

arbitrary or irrational for Congress to conclude that the legislative purpose of

rewarding domestic producers who supported antidumping petitions . . . would be

'more fully effectuated' if the petition support requirement were applied both

prospectively and retroactively."  Id. at 13 (quoting Pension Benefit Guaranty Corp. v.

R.A. Gray & Co., 467 U.S. 717, 730 31 (1984)).  We conclude, therefore, that Congress did

not violate Plaintiffs' Fifth Amendment due process rights in basing potential eligibility

for CDSOA disbursements on a decision on whether to support the petition that

Plaintiffs made prior to the enactment of the CDSOA.  Accordingly, we will dismiss

these claims in Plaintiffs' Complaints for failure to state a claim upon which relief can be

granted.

### B.   Procedural Due Process

The Pat Huval Plaintiffs claim that they were deprived of a vested property

interest without notice or hearing in violation of the due process guarantee.  (Compl. 1

¶¶ 27  28.)  Having failed to satisfy the petition support requirement of the CDSOA,

however, the Pat Huval Plaintiffs never obtained a right to receive distributions under

the statute.  Therefore, they lack the property interest on which they have based their

procedural due process claim.  "The first inquiry in every due process challenge is

whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'"

American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999) (citations omitted).  In

the absence of such a property interest, there can have been no violation of procedural

due process.  This claim has no merit because the Pat Huval Plaintiffs, having failed to

support the relevant antidumping duty petition, have no cognizable property interest in

CDSOA distributions.  (See Compl. 1 ¶ 22.)  Accordingly, the Pat Huval Plaintiff's

procedural due process claim is dismissed for failure to state a claim upon which relief

can be granted.

### C.   Bill of Attainder

The Pat Huval Plaintiffs alone assert a claim that the CDSOA constitutes a Bill

of Attainder in violation of their Fifth Amendment rights, arguing that the statute

retroactively penalizes certain domestic producers for past actions.  (Compl. 1

¶¶ 40  42.)  The Supreme Court has stated that

> [a] bill of attainder is a legislative act which inflicts **punishment** without a
> judicial trial. . . . [L]egislative acts, no matter what their form, that apply
> either to named individuals or to easily ascertainable members of a group in

> such a way as to inflict punishment on them without a judicial trial are bills
> of attainder prohibited by the Constitution.

United States v. Lovett, 328 U. S. 303, 315 316 (1946) (internal quotation marks omitted)

(emphasis added).  On its face, the CDSOA does not contain any provision that "inflicts

punishment" on those who did not support a petition.  Moreover, as the Court of

Appeals concluded in SKF USA II, the purpose of the CDSOA is not to punish a

particular class of persons; instead, the Court of Appeals concluded that a purpose of

the CDSOA was to reward with monetary benefits those entities who supported

government enforcement of the antidumping law by bringing or supporting an

antidumping petition.  SKF USA II, 556 F.3d at 1351 52.  The Court of Appeals

concluded that this goal is rationally related to a substantial government interest,

namely, enforcement of the trade laws, and reasoned that it is not unfair to deny

benefits to non supporters of antidumping petitions.  Id. at 1359 60.  Because the

CDSOA is not a bill of attainder, the Pat Huval Plaintiffs' claim to that effect adds

nothing beyond their claim that the CDSOA is impermissibly retroactive in violation of

the due process guarantee of the Fifth Amendment, a claim we rejected supra.

Therefore, we will dismiss the Bill of Attainder claim as one on which no relief can be

granted.

IV.     SKF's and the Pat Huval Plaintiffs' APA Claims Are Without Merit

   A.   The Pat Huval Plaintiffs' APA Claim

        The Pat Huval Plaintiffs claim that the actions of the ITC, which refused to

include the Pat Huval Plaintiffs on the list of affected domestic producers, and of CBP,

which refused to pay CDSOA distributions to the Pat Huval Plaintiffs, must be set aside

as unlawful under the APA.  (Compl. 1 ¶¶ 31 34.)  The Pat Huval Plaintiffs claim that

Defendants arbitrarily and capriciously "adjudicate[d] a right bestowed by Congress in

the year 2000 based on a proceeding that took place in the year 1996," and also that

Defendants made unspecified decisions "regarding Byrd Amendment eligibility" that

were "based on wholly arbitrary and capricious standards."  (Id. ¶ 33.)

        When the ITC based its determination about the Pat Huval Plaintiffs' eligibility

to become ADPs on the Pat Huval Plaintiffs' failure to express support for the relevant

antidumping petition in 1996, it did not act arbitrarily or capriciously.  To the contrary,

in the case of orders in place at the time the CDSOA was enacted, the CDSOA required

the ITC to base its eligibility determination retroactively on the basis of petition support.

19 U.S.C. § 1675c(b)(1)(A) (an ADP must have been "a petitioner or **interested party in**

**support of the petition** with respect to which an antidumping duty order . . . has been

entered."), (d)(1) ("The Commission shall forward to [CBP] . . . in the case of orders or

findings in effect on January 1, 1999 or thereafter . . . a list of persons **that indicate**

**support of the petition** by letter or through questionnaire response."). Additionally,

the Pat Huval Plaintiffs' Complaint alleges no facts from which we could conclude that

the ITC and CBP made decisions regarding eligibility for CDSOA distributions in an

arbitrary or capricious manner.  As to this claim, the Complaint does not "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  In the absence of any factual allegation from which

we otherwise could conclude that either agency's actions were violative of the APA, we

conclude that the Pat Huval Plaintiffs' APA claim must be dismissed.

    **B.   SKF's APA Claim**

       The Court construes the claim brought by SKF challenging the ITC's "position

that a decision by this Court as to SKF USA's status as an 'affected domestic producer'

for one fiscal year's disbursements will not be applied to any year but that one fiscal

year," as a challenge to agency action under the Administrative Procedure Act.

(Compl. 4 ¶ 70; see 5 U.S.C. §§ 702, 704 (authorizing persons aggrieved by certain types

of final agency action to seek judicial review thereof).)  The Constitution permits a

federal court to exercise jurisdiction only over a live case or controversy.  U.S. Const.

art. III, § 2.  In order to satisfy the case or controversy requirement, "a litigant must

have suffered some actual injury that can be redressed by a favorable judicial decision."

Iron Arrow Honor Society v. Heckler, 464 U.S. 67, 70 (1983).  If "the issue[] presented

[is] no longer 'live' or the parties lack a legally cognizable interest in the outcome," the

case is moot.  PPG Industries, Inc. v. United States, 11 CIT 303, 306, 660 F. Supp. 965, 968

(1987) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)).  SKF brought this claim

subsequent to having obtained a successful judgment in SKF USA I, but prior to the

reversal of that decision in SKF USA II.  Because SKF no longer has a decision from this,

or any, court that it is entitled to status as an affected domestic producer, it cannot claim

injury by virtue of the ITC's "position," and therefore this claim is now moot.

Consequently, SKF's APA claim must be dismissed on mootness grounds pursuant to

USCIT Rule 12(b)(1).

## V.    SKF and Koyo's Joint Motion for Preliminary Injunction

        Plaintiffs SKF and Koyo move for a "preliminary injunction" under which

Defendants would be enjoined from disbursing CDSOA funds for fiscal years 2006

through 2010 from the antidumping duty orders covering ball bearings and tapered

roller bearings during the pendency of this litigation, including all appeals, petitions for

further judicial review, and remands.  (Pls.' Joint Mot. for a Prelim. Inj. (Jan. 6, 2012),

ECF No. 235.)  A preliminary injunction normally dissolves upon the entry of judgment.

See Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981) (stating that the purpose of a

preliminary injunction is to preserve the status quo until the merits of the action are

ultimately determined); 11A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice</u>

<u>and Procedure</u>, § 2947 (2d ed. 2010) (a principal purpose of preliminary injunctive relief

is "to preserve the court's power to render a meaningful decision after a trial on the

merits."). Because we are bringing the entire case to a conclusion at this time, the

question of a preliminary injunction to prevent irreparable harm during the pendency

of the case before us is now moot.

The injunction sought would extend past the entry of judgment in this case;

consequently, it is, in this respect, akin to "permanent" equitable relief. Our conclusion

as to the disposition of the injunction motion, however, is no different. We have

concluded for the reasons discussed above that no remedy, either at law or in equity, is

available on the claims properly before us, <u>i.e.</u>, those not dismissed under USCIT Rule

12(b)(1) for lack of jurisdiction. Moreover, the injunction sought would prejudice

Defendant Intervenors, who would experience further delay in obtaining withheld

distributions, and it would not serve the public interest, which is furthered by a lawful

and orderly administration of the CDSOA. Even when we presume, for the purpose of

deciding the motion, that SKF and Koyo would be irreparably harmed by the pending

distribution of withheld funds, we still conclude that SKF and Koyo do not qualify for a

permanent injunction. <u>See</u> <u>Ebay Inc. v. Mercexchange, L.L.C.</u>, 547 U.S. 388, 391 (2006)

(requiring for a permanent injunction that a plaintiff have suffered an irreparable injury,

that the remedies available at law be inadequate to compensate for that injury, that

considering the balance of hardships between the parties, a remedy in equity be

warranted, and that the public interest would not be disserved by a permanent

injunction).  Therefore, we will deny SKF's and Koyo's motion for an injunction.

## VI.      Koyo's Motion for Leave to Amend Its Complaint Is Denied for Futility

Koyo has moved to amend the complaint to add a claim against Defendant

Intervenors for unjust enrichment. (Proposed Am. Compl. ¶ 81, ECF No. 145.) We must

deny this motion. Amending the complaint would be futile because the proposed new

claim would be outside the Court's subject matter jurisdiction under 28 U.S.C. § 1581(i),

which is limited to civil actions against "the United States, its agencies, or its officers."

The proposed claim, which is a direct claim by Koyo against Defendant Intervenors,

does not fall within the Court's limited jurisdiction over counterclaims, cross claims, or

third party actions. See 28 U.S.C. § 1583. Nor may we exercise jurisdiction over this

proposed claim by invoking supplemental jurisdiction as granted by Congress to the

district courts, 28 U.S.C. § 1367, or common law pendant or ancillary jurisdiction. See

Sioux Honey Assoc. v. Hartford Fire Insurance Co., No. 2011 1040, 2012 WL 379626, at

*6 *9 (Fed. Cir. Feb. 7, 2012).

## CONCLUSION

For the foregoing reasons, Koyo's motion for leave to amend its Complaint

will be denied; Koyo and SKF's joint motion for injunctive relief will be denied; Koyo's

claims with respect to the fiscal year 2006 CDSOA distribution and SKF's claims with

respect to the fiscal year 2004 CDSOA distribution are barred by the statute of

limitations in 28 U.S.C. § 2636(i) and will be dismissed pursuant to USCIT Rule 12(b)(1);

SKF's APA claim will be dismissed as moot pursuant to USCIT Rule 12(b)(1); and all

other claims will be dismissed for failure to state a claim upon which relief may be

granted pursuant to USCIT Rule 12(b)(5).  We conclude, further, that no valid purpose

would be served by allowing any plaintiff a further opportunity to seek leave to amend

a complaint and, accordingly, that there is no reason to prolong this action.

Consequently, this action will be dismissed.   Judgment will be entered accordingly.


                                           __/s/ Gregory W. Carman___
                                           Gregory W. Carman, Judge


Dated:    March 1, 2012
          New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PAT HUVAL RESTAURANT & OYSTER BAR, INC., *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES INTERNATIONAL TRADE COMMISSION, *et al.,*<br><br>Defendants,<br><br>and<br><br>THE TIMKEN COMPANY and MPB CORPORATION,<br><br>Defendant Intervenors. | Before:  Gregory W. Carman, Judge<br>Timothy C. Stanceu, Judge<br>Leo M. Gordon, Judge<br><br>Consol. Court No. 06-00290 |

## JUDGMENT

Upon consideration of the complaints filed in the above captioned consolidated action, the dispositive motions filed by Defendants and Defendant Intervenors, Plaintiff Koyo's motion for leave to amend its complaint, Koyo and Plaintiff SKF's joint motion for injunctive relief, and all other papers and proceedings herein, and in conformity with the court's Opinion issued on this date, it is hereby

**ORDERED** that Koyo's motion for leave to amend its complaint is denied; it is further

**ORDERED** that Koyo and SKF's joint motion for injunctive relief is denied; it is further

**ORDERED** that Defendants' motions to dismiss and for judgment on the pleadings are granted; it is further

**ORDERED** that Defendant Intervenors' motion for judgment on the pleadings is granted; it is further

**ORDERED** that Koyo's claims with respect to the fiscal year 2006 CDSOA distribution and SKF's claims with respect to the fiscal year 2004 CDSOA distribution are barred by the statute of limitations in 28 U.S.C. § 2636(i) and are dismissed pursuant to USCIT Rule 12(b)(1); it is further

**ORDERED** that SKF's APA claim is dismissed as moot pursuant to USCIT Rule 12(b)(1); it is further

**ORDERED** that all other claims in this consolidated action are dismissed for failure to state a claim upon which relief can be granted pursuant to USCIT Rule 12(b)(5); it is further

**ORDERED** that this action be, and hereby is, DISMISSED.

                                    /s/ Gregory W. Carman
                                    Gregory W. Carman, Judge

Dated: March 1, 2012
         New York, New York